Good morning, and may it please the Court, I'm Paul Klave on behalf of Appellant. I'd like to reserve three minutes for rebuttal, please. And before addressing the merits of whether the Bankruptcy Court correctly resolved the motions for summary judgment below, I would like to begin by urging the Court to determine that, in fact, the Bankruptcy Court in this case did not have subject matter jurisdiction to issue any judgment below. The appellee, E.M.B., has agreed with me on that issue repeatedly, but now has raised a number of issues on that issue, and I would urge the Court to reject all three of them. First, it argues that the Bankruptcy Court in this case did not have subject matter jurisdiction to issue any judgment below. First, it argues that the Bankruptcy Court in this case did not have subject matter     matter jurisdiction to issue any judgment below. So I would urge the Court to reconsider that they're not quite so sure about their position. Well, I'm suggesting both, Your Honor. Excuse me? Was it to their advantage to take that position at an earlier time? At that time, they determined that it was to their advantage to have this proceeding stop and for both parties to proceed back to Delaware to address the issue. Okay. Assuming their judicial estoppel would ordinarily apply, is this subject matter jurisdiction that's non-waivable? The subject matter, on our part, yes. But it seems to me that for good or ill, Article III jurisdiction is always available to us, no matter what the behavior of the parties below. That's right. At any time that Your Honors can determine that, in fact, there's a lack of subject matter jurisdiction, then you should decide the case should be over at that point. And I think vice versa. What I'm driving at, I've not consulted with my colleagues. I think the question is fairly presented to us, irrespective of what the prior positions of either side has been, as to whether or not there's Article III jurisdiction. And I don't speak for my colleagues. I speak only for myself on that. Well, Your Honor, I assume that was it because we got the notice to appear here. So I'm assuming that the Honors have not decided that it's been waived and will address it. The first issue, as I said, they're arguing that, in fact, this was a core proceeding that was arising under the Bankruptcy Code. And in order to argue that, they're saying that their complaint alludes to a prior adversary proceeding filed by the bankruptcy trustee, in which, in fact, he was alleging that he had been acting under Bankruptcy Code Section 544. But that actually sort of illustrates the problem here, is that was an action that  That action is not before this Court. All of the bankruptcy proceedings were long since dismissed. The claim that is made here doesn't involve the debtor, doesn't involve the trustee, doesn't involve any creditor of the debtor. That case is over. And, in fact, they have claimed that, instead, it arises under the Declaratory Relief Act, not under Bankruptcy Code. You know, here's the argument, it seems to me, that's at least a pretty good argument as to why the bankruptcy court had jurisdiction and, therefore, things were proper jurisdictionally, and that is that the reopening was sought in order to clarify that which had been conveyed at the sale. And the question then was, okay, what's the meaning of the order of the bankruptcy court? Why is there not ancillary jurisdiction for the bankruptcy court to reopen and to say this is the effect of my order? Well, Your Honor, that's covered by the Ray case that we cited. And, again, it's a breach of contract case. That's to say there's no dispute as to what the contract was. The question is whether it was breached. Here, the question is what was conveyed. But, again, what Ray is saying is that once it's over and once the parties are no longer before the bankruptcy court, that, in fact, the ancillary jurisdiction aspect doesn't apply, that that proceeding is done. Even to clarify an order that might not be clear? Well, yeah, even in that case. Because, again, under Ray, they agree that that case does cause the ancillary jurisdiction aspect of this one to be called seriously into question. Under that case, parties cannot re-invoke, basically, the jurisdiction of the bankruptcy court once we're done with it. And that's exactly where we're at. What's the logic of that? I don't know. I'm going to try to follow why, if a judge issues an order that a few years down the road, everybody is confused about what it means, why people affected can't go back and say, can you tell us what you meant? Not open a new case, not re-litigate the whole thing, but just tell us what you meant. Well, and to some extent, we're getting into the merits of the summary judgment here. But in this case, in particular, Your Honor, the at the time of the sale hearing, the bankruptcy court had the issue before it and basically said it wasn't going to resolve it. There were questions raised about whether this option was a part of the lease, and the court said, we're not going to address that. This is between the parties to resolve legally down the line. The attorney ---- Well, the judge, you're talking about the August 9 order, August 9 of 2006? That's correct, Your Honor. The judge approved the sale free and clear, including an assignment of any interest in any estates in the leases. That's right. Apparently, people didn't understand what he meant by that. So they go to court a couple of years later in Delaware, and the judge says, I don't know what Judge Baum in Arizona meant when he did this. Go back and ask Judge Baum. Judge Baum goes back and says, this is what I meant. I don't see why he can't ---- why Judge Baum couldn't do that. Well, again, Your Honor, the case is over, and under the Wray case, that should be the end of the jurisdiction at that point in terms of any ancillary jurisdiction. The court has already said it's going to be something that's going to be resolved by the parties down the line, and that should be based on the leases and on the Delaware law, which, in fact, is what all of the leases say is the law that should apply in this case. So that it ---- and the bankruptcy courts ---- I mean, the Delaware courts sending it back to the bankruptcy court, again, doesn't confer any jurisdiction on the bankruptcy court. So once it should ---- our position is that, of course, it should be in the Delaware court for the Delaware court to determine based on State law. Well, it wasn't kicked out of the Delaware court. The Delaware court said go back and ask Judge Baum to clarify it and then come back and tell me what he said. Right. Our position is, again, that that doesn't confer any jurisdiction on the bankruptcy court to ---- Well, that doesn't. I mean, the Delaware court can't confer jurisdiction on them, but the parties can go back and say, Judge Baum, are you willing to open up the case and tell us what you meant? And I guess he could say, yes, I'm willing, or no, I'm not willing. I don't get why he can't do that. Well, we think that the Wray case covers in this instance that, in fact, once it's over and once the bankruptcy court, in particular in this one, has basically told the parties, I'm not going to resolve this, this is for you to decide down the line between yourselves, and says on the record, you know, we can't do anything else about the leases here, that, in fact, at that point, the bankruptcy court is done with it, and that would be ---- it's something that should be resolved in the Delaware court. So how is the Delaware court supposed to resolve this? Pardon me? How does the Delaware court resolve it? Delaware court should look at the leases themselves to determine which one is going to come into play. Does the Delaware court's resolution of this have to determine what was in the bankruptcy judge's mind? Well, it has to look at not necessarily what's in the bankruptcy judge's mind, but what in fact occurred at the hearing, what effect it has, what effect under Delaware law the various leases, what the effect is on those parties as to who has the option. Courts have to make those kinds of judgments all the time. We may have to make a judgment as to what parties thought when they entered into a contract, or we may have to ---- sometimes we're asked to decide what the framers of the Constitution thought at a particular time. It's not often that we have the opportunity of asking what was in the mind of a neutral decisionmaker who's still alive and available. Well, that's true. That's kind of a nice opportunity, isn't it? Okay. Assuming that the person's still alive. We can go back to James Madison and ask him what he thought when he wrote this particular  It seems like we ought to take advantage of that opportunity. Save a lot of time, Your Honor. But, again, if the Court has jurisdiction to do it, that's fine. If, in terms of this case, again, assuming that the Court did have jurisdiction, the Court erred in ruling that there should be sovereign judgment. Yes. So, yeah, if you address the merits, and not what the district court, not what the bankruptcy court did, but rather the basis upon which the BAP affirmed. Why is the BAP wrong? Well, Your Honor, I think one of the problems we have in both courts is basically that the determination really is contrary to what was in the minds of everybody at the time. Because in this case, we have the sale application. Now, assume for a moment that it was a lease. Was the lease assumed by the trustee? That is to say, the lease you want to rely on, the lease that contained the so-called option agreement, was that assumed by the trustee? Well, the trustee's attorney at the hearing said that that was what was going to happen. Well, but it was unclear at the hearing what lease was assumed by the trustee. It seemed to me that that hearing is entirely consistent with it was just the one-year lease, the first document, that didn't contain the option. And Black is saying, you know, I'm not interested in taking this subject to the option. And the trustee is saying, the two leases here are the only thing that's been assumed. And Black's saying, I'm not taking it according to the option. As I read that, I think both the trustee and Black were saying, the only leases that have been assumed and are being transferred are the two leases that were first entered into that didn't contain the option. That's how I read that. Now, I understand it could be ambiguous, and you go back and you ask the bankruptcy judge, assuming they have jurisdiction to do that, he basically says, yeah, that's right. Except, Your Honor, that the trustee's attorney acknowledges that they had already received the other options, the other leases. I understand that, too. At the time. Well, that's why it's somewhat ambiguous. But why is the BAP wrong in saying, for example, you know what, in terms of bankruptcy law, these weren't even leases. This was a financing arrangement. Well, again, Your Honor, because that is contrary, for the BAP to come in at that point and say something that is contrary to what everybody understands at the time of the hearing makes the – turns the hearing into sort of a sham or a farce. Everybody at that hearing thought that the property was being sold with these leases with the leases. No, wait a minute. The question is these leases. What leases are we talking about? It's clear that Black thought that he was taking this property subject to the one-year lease or the two leases for one year that didn't contain the option. It's clear that Black was willing to do that. Right. It's also clear that Black was unwilling to take any leases that contained an option. Well, but it seems – while the attorney was trying to get that resolved by the court, the court just cut it off. I don't think the court understood what they were talking about. Well, but the trustee's attorney did. And the trustee's attorney is saying, yes, the options are related to these leases. This is an issue. I don't read the trustee as the attorney is saying that at all. Well, there is a portion there, Your Honor, where the trustee's attorney does say, yes, the options are an issue. They're related to these leases. The attorney is trying to get the court to say what is this sale going to be, which one is it. And the court says opening bid is 425. And Black makes it very clear by a subsequent action that he's absolutely unwilling to close on this unless he's – Black makes it very clear both then and later that he's absolutely unwilling to buy if it's subject to the option. Well, he says that.  And which is why he says I'm not taking it if it's subject to the option. But then it's – again, it's not resolved at the hearing. There's no indicating – the judge says, in fact, I'm not going to resolve this. It's up to you down the line to argue about this legally. But from my standpoint, we're done. Here's the opening bid. And it rejected the attempts of the other attorney in order to determine what exactly was being done. I see you're down to about a minute left, so. Thank you. Good morning. Good morning. May it please the Court, I'm Theresa Currier representing Eric Black today. I'd like to start out and give the Court a roadmap to the undisputed facts in the record and tell you exactly where they are in the record that justify affirmance of the summary judgment. The three most important facts you've already talked about, and there's something that don't appear in the record. The fact that the leases were never assumed, either version, no adequate assurance of future performance was provided, and there's no assignment of either lease. Those three requirements under Section 365F are required for any leases to be assigned to a purchaser. So these leases never got to Eric Black, either version. So those are important undisputed facts. Next, I'd like to ask the Court to look at the Section 544 default judgments. Mr. Clevens said those are dismissed, but that's actually not true. One of them was dismissed with respect to Artesia, Inc., but they're in three separate orders, and the order against Kraft American Holdings and the other, Artesia, both of those still remain, and they bind successors and assigns. And those orders provide that that party and its successors and assigns has no claim at all to this property, including no purchase option. That's at the Eric Black excerpts of record at page 150, 151, and 152. And in this case, Nash is both a successor to Kraft and an assignee indirectly and directly from the Artesias. So those orders remain, and that's another reason for affirming our summary judgment below. Next, the sale order itself has Section 363M, finding of fact in it that Eric Black is a good-faith purchaser. This Court has written about Section 363M in other cases, and what it does is it brings finality into a sale and it brings in the doctrine of equitable moodness, which makes total sense for this case, because Eric Black paid nearly $500,000 for this property, and he believed it was burdened with two leases without options. And that money has been distributed to creditors, and it can't be clawed back. So we think the 363M finding and the benefits of 363M are very important here. And also the clear channel case cited by Nash talks about equitable moodness. Next, when Eric Black's offer to purchase expired, the trustee made demand on Rune Kraft to step up as the backup bidder, which was what he was contractually bound to do. He made demand on him, and Mr. Kraft did nothing, even though he desperately wants this property and he's been litigating about it now for seven years. He had the opportunity to buy it before Mr. Black ever did, and he did nothing. And that's oddly similar to, that's at Nash excerpts of record at page 138. That's oddly similar to when Rune Kraft sat in the hearing at the sale hearing and didn't bring out the options and show the court, another undisputed fact. The options were never recorded under California law. That's in the trustee's strong-arm pleadings at the Nash excerpts of record at page 314. And the bankruptcy court found that the only leases that the trustees showed Eric Black were the leases without options. That's based on the Mary Martin declaration at Nash excerpts of record, page 188, and also the Eric Black affidavit at page 181. But that may be true, that those are the only leases that the trustees showed Black, but it's pretty clear that Black is aware that there are leases containing options because he's making very clear he doesn't want to have anything to do with the options. So somehow he learned that there was a document or documents that contained the options. The record doesn't show that he knew there were leases with options. He heard that options were being bandied about. The record does show that he's saying, I'm not taking subject to any options. So he knows somehow that those are on the table as a possibility. And he makes clear that he's not interested in those options. Yes. And so the trustee brings the 544 action to void any unrecorded options. Why would the trustee have done that if the trustee had the leases in hand and thought he was selling to Eric Black the leases with the options? There would be no need for the 544 action to void that. He's trying to get those cleared up so that he can close for this buyer. And we assert that Eric Black justifiably relied on those default judgments, all three of them, because he closed after they were thought to be final. The terms of the leases are also undisputed, and we – and the BAP did an exhaustive analysis about them under the Moreggia case. They're not – they show that these aren't leases at all, and therefore Section 365 doesn't apply. Counsel, I have a question about the BAP's decision. The BAP finds that these are not true leases. Right. Are you defending that judgment, that these are not true leases? We think the Court can affirm on any basis it finds in the record. So we – Did you urge this argument on the BAP? Did you make this argument before the Bankruptcy Court? We did not make the argument before the Bankruptcy Court. The BAP came up with that argument on its own. Okay. It's an interesting – it's an interesting question, especially in light of our – of our conversation with Mr. Clevin about the question of jurisdiction. That is, if we're going back to the bankruptcy judge to say, what was in your mind when you were doing this? And then the BAP says, well, we've got an alternative ground for affirming it. We're wondering why the BAP can sort of reopen this on other grounds. And in other words, it's like – it's like a – it's like a collateral proceeding. It's like a do-over for the BAP. Well, the BAP was required to look at this de novo. So the BAP looked at it brand new as if it was the Bankruptcy Court also. That doesn't – that doesn't mean they get to open up every new issue. You may look at an issue de novo, but that's different from taking on a case de novo. I understand that point. But the BAP is three bankruptcy judges, too. And whenever leases and sale come up in any context, it's axiomatic for a bankruptcy judge to think about Section 363 and to think about Section 365. So it's part of their zeitgeist to do that, we assert. But we did not argue it. It was a pretty broad zeitgeist, wasn't it? It was. So this isn't really a lease shows up for the first time when the BAP says, hey, maybe this isn't a lease. So that was – was that not argued to the BAP either? Pardon? Was what not argued? The question is whether or not this is a true lease. Was that argued to the BAP or did the BAP totally sort of string it from the bench? The BAP pulled that out of air. Did they mention it during argument? No. So it just shows up in the written opinion? It just shows up in the opinion. Nobody was more surprised than you. Well, we were surprised, but we believe they reached the same result. Maybe pleasantly surprised. Pardon me? Maybe pleasantly surprised. We were pleasantly surprised. Again, any reason that the affirmants, both of them found that the leases were never assumed, that's something both courts found. The BAP came up with this other analysis and used Section 363-F to get rid of any lingering effect of the options. It's just another way to clean up the options if you don't want to look at the Section 544. Well, as I understand it, their argument is, is that you didn't have any right to go back to Judge Baum at all. Not to question what the BAP's jurisdiction was. Jurisdiction. Judge Baum closed the case, and you were not a creditor. You were not a debtor. You're just basically strangers to the action, and you have no right to go back. Well, let me talk about that a little bit. Mr. Clevin has argued that this is hauntingly similar to the Wray case, and while the facts are hauntingly similar, jurisdiction turns on the critical differences. In Wray, there weren't substantial questions of bankruptcy law. But here, as we've talked about, four bankruptcy judges, Judge Baum and the three who sit on the BAP, analyze these substantial questions of bankruptcy law differently. It's a very substantial issue, and it makes me wonder how the Delaware court could ever untangle the Gordian knot of all these bankruptcy issues. But also, it's not a separate collateral proceeding the way that in the Wray case it was, some state court attack that comes up after the case is closed. This one, our Delaware chancery action, was brought while the reality of bankruptcy was still pending, which is significant under the Valdez Fisheries case. Also, it's a mere continuation of the same dispute that started right in the bankruptcy court when everybody was there. It's not some new theory that came up later. This same issue, this same dispute involving all the same parties, has gone from action. It showed up in the motion to reopen the default judgments. It showed up in the California detainer action. And now its latest stop is in Delaware chancery court. But we assert it's the exact same continuation of the same dispute. And practically, in Wray, the court actually ruled on what happened to the right-of-first refusal. It put in the order that the right-of-first refusal had no effect. So in Wray, this Court said the state court could have read that order and given it res judicata effect, and it could have. It could have read the words and known what the bankruptcy judge ruled. Here, the bankruptcy judge did not rule clearly. The transcript is open to ambiguity. And there isn't a clear direction in the order that says what happened to the options or even what happened to the leases. So this is different than Wray. It has to go back to the bankruptcy court to be sorted out. Yeah. I mean, I think this goes along the same line. And perhaps this would be helpful to you as you stand up and rebuttal. As I would characterize this particular difference between this case and Wray as in Wray, it was reduced to a breach of contract question decided under State law. Here, the question is, what was the contract? Exactly. There's a contract of sale, and the question is, well, what was sold? Exactly. And here we have to go back because it was the effect of all these intrinsic bankruptcy sections. Section 363F, what remained? What does free and clear mean? What does a 544 order do? Was there justifiable reliance? What does a 363M finding mean? What happens to the buyer? And when the Court talked earlier about ancillary jurisdiction, another reason for ancillary jurisdiction is not just to clarify a prior order, but it's to validate the process and the proceeding. So for in bankruptcy, bankruptcy sales are kind of protected creatures. The Court wants to make sure that the buyer gets finality so that it will put the most money on the table. No buyers would ever put the most money on the table if they thought they were going to be litigating for 7 years. Mr. Black has spent more in legal fees in litigating than he paid for the property. That's not how these sales are supposed to work. So ancillary jurisdiction exists. There's a separate question in a sense divorced from the merits. What has all of a sudden made this property so valuable that people are willing to litigate far in excess of the actual purchase price? That's something we ask ourselves about the other side as well, because it's a simple property. It's not like it has oil underneath it. There's nothing special about it. But the other side has continued to litigate. It appears in an unreasonable and beyond business judgment way. We're unclear about why the litigation still continues. So we talked about jurisdiction. I don't want to gloss over the equities in this case, because the Bankruptcy Court is a court of equity, and it gave great deference to the equities here. And I want this Court to understand about what's behind this matter, because it's so very compelling for my client. Eric Black paid almost $500,000 into the bankruptcy estate, and that money's been distributed to creditors. You can't claw that back, and you can't unscramble those eggs. And that purchase price would never have been paid if he ever knew that the strike price for an option was very significantly less than what he had just paid. That would make no sense. And that shows his intention and what was in his head, which was that he thought he was buying without options. He was willing to buy and have the leases go along that didn't have options, but even those leases are gone because the tenants never paid him any rent. He went to California court and had an unlawful detainer action brought and had them ejected. So those leases were breached. They don't exist anymore. All that's left is this lingering question about purchase options. Eric Black did everything he could at the right time to clear up his rights. He relied upon the strong-arm proceeding under Section 544 and the default judgments, and we think that reliance was justifiable. He did everything he could promptly, but Runecraft and the craft-controlled entities did the exact opposite. Runecraft sat in the sale hearing and didn't produce the leases with the options when the court asked about them. Runecraft's bankruptcy counsel asked Judge Baum a lot of questions about assumption of those leases, but instead of making sure that the trustee filed those required pleadings and got assumption done, or he could have filed a motion to compel assumption himself. You can do that in a bankruptcy proceeding. He did nothing. When the trustee called on Runecraft to step up as backup bidder and buy this property that he wants so desperately, he did nothing. And when the trustee brought the strong-arm actions, craft and the Artesias did nothing and default judgments were entered. Now, the one Artesia, Artesia Inc., waited 16 months to try to open that judgment, which Judge Baum said was way too late and not appropriate. But the other two judgments remain today, and they bind successors and assigns, which includes Nash. Eric Black is a bona fide purchaser who brought great value to this bankruptcy estate, value that's been distributed to creditors. And in contrast, Runecraft and his craft-controlled entities are the opposite. Their latches have added seven years to this dispute, chasing a property that he could have bought in 2007 as the backup bidder. So equity overwhelmingly favors Eric Black as a bona fide purchaser, and so does public policy that protects a bankruptcy sale as a protected creature under the Bankruptcy Code. So for these reasons, we assert that Eric Black should receive finality today, and we ask the Court to affirm. Thank you. Thank you. David? Yes, Your Honors. In terms of what happened at that sale proceeding, I would like to look at page 174 of our excerpts of record. And there was a discussion, and Your Honor was right. It wasn't the trustee's counsel, the trustee himself, when the Court asked about the options. That was what was being discussed. Well, are those part of the lease? And Mr. Brown, the trustee, said they are tied together, Your Honor. It's economic incentives for the tenants. That's what we're talking about. So the idea that somehow Mr. Craft should have put these leases in front of everybody makes no sense. The leases were there. Everybody knew that these options were something that were a part of the concern at the time in terms of what was going to happen at that sale.  I was thinking that the bankruptcy judge should be able to clarify, but there's no clarification either by the bankruptcy judge or by the BAP, certainly, as Your Honor pointed out. That issue came totally out of left field. That was not in the contemplation of anybody at the time that this was going on, certainly not the bankruptcy judge. He never came up with it, and certainly not the parties. And we need to look at, again, what was in the contemplation of the judge at the time. His summary judgment is he issued summary judgment despite disputed facts, for example, one being the number of liens that were on there. If you're going to apply 363F, there have to be specific findings and specific conditions. None of that happened in this case. Thank you very much, Mr. Grubin. Ms. Currier, thank you as well. The case is discharged as submitted.
judges: Silverman, Fletcher, Bybee